UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRENELL SMITH** | **CIVIL ACTION NO.** |
| **VERSUS** | **SEC.       MAG.** |
| **TULANE UNIVERSITY OF LOUISIANA, THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND, AND THE ADMINISTRATORS AND DEAN OF THE TULANE SCHOOL OF MEDICINE** | **JURY TRIAL REQUESTED** |

DATE:_____        CLERK:_____

## COMPLAINT
## (TITLE VII DISCRIMINATION AND RETALIATION)

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff Trenell Smith (hereafter "Plaintiff") who, in accordance with 42 U.S. Code § 2000e–2 *et. seq*. Unlawful employment practices institute the instant cause of action.

### PARTIES

1. Plaintiff is of full age of majority, competent, and residing in Orleans Parish, New Orleans, Louisiana. Made Defendants are Tulane University of Louisiana, The Administrators of the Tulane Eductional Fund, and The Administrators and Dean of the Tulane School of Medicine (hereafter "Defendants"), located at 6823 Saint Charles Ave, New Orleans, LA 70118.

2. At all times relevant to the allegations set forth herein, Defendants have ultimate hiring and firing and disciplinary authority over Plaintiff.

### VENUE & JURISDICTION

3. Venue & Jurisdiction are proper before this Honorable Court pursuant to 28 USC §1331; 28 USC §1332; 28 USC §1367; and 28 USC §1391.

1

## ADMINISTRATIVE EXHAUSTION

4. Plaintiff has exhausted administrative requirements of 42 U.S. Code § 2000e–2 *et. seq* to bring claims for discrimination based on race (disparate treatment), sex, and retaliation.

5. Plaintiff received a right to sue letter on or about September 10, 2019, and is filing suit within ninety (90) days of receipt of that communication.

## STATEMENT OF FACTS

6. Plaintiff's employment with Defendants' commenced on or about July 1, 2016.

7. Plaintiff, an African American Female, is employed by Defendants' as a Program Coordinator for Internal Medicine and Ambulatory ("IMA") and Internal Medicine and Pediatrics ("IMP"), earning approximately $39,800.00 per year.

8. In 2017, Plaintiff filed a complaint with Defendant's Office of Institutional Equity (hereafter "OIE") in accordance with the Defendant's administrative processes. The Plaintiff participated in the OIE investigation process, and engaged in the Equal Employment Opportunity Commission (hereafter "EEOC") mediation process with Defendants' on September 12, 2017.

9. After Plaintiff filed her charge with the EEOC, Defendants' engaged in a continued campaign of race and sex discrimination, and retaliation against the Plaintiff in violation of 42 U.S. Code § 2000e–2 *et. Seq.*

10. The Plaintiff filed a complaint with the Equal Employment Opportunity Commission on May 10, 2019. The EEOC issued Plaintiff a Right-to-Sue letter on September 10, 2019.

11. The Plaintiff has two supervisors, Dr. Princess Dennar (hereafter "Dennar") and Dr. Anthony Marsh (hereafter "Marsh"). Marsh, a white male, was aware that Plaintiff had been subject to race discrimination by Temple Byars (hereafter "Byars"), a white female, and a former Tulane employee, who was eventually found in violation of Tulane's Equal Opportunity Policies.

2

Instead of terminating the employee who had harassed and discriminated against Plaintiff, Defendants' allowed Plaintiff's harasser to resign and leave quietly. Marsh was aware of the fact that Plaintiff had filed an internal grievance with Tulane and had complained to the EEOC.

12. Marsh told Plaintiff that his judgments, views and perceptions about the Plaintiff "may have been clouded what Byars [Defendants' former employee] told him about Plaintiff's work ethic." Marsh told Plaintiff that he would like to start fresh and would be more involved, as well as give Plaintiff the tools necessary to successfully manage Marsh's portion of the program. Despite telling Plaintiff that he wanted to start fresh, Marsh subjected Plaintiff to continued discrimination and retaliation.

13. Specifically, from July 2017 to May 2019, a series of actions occurred from a number of Defendant's employees including Marsh, Deepa Bhatnagar (hereinafter "Bhatnagar"), a Senior Associate Program Director, and Dr. Jeffry Weise (hereinafter "Weise"), that shows retaliation and a hostile work environment towards Plaintiff.

14. Marsh, Bhatnagar, and Weise all worked collectively and individually in their official capacities to remove Plaintiff from the Internal Medicine Primary Care duties as follows: Electives, Grand Rounds, Billing, Spreadsheets, Ambulatory Conferences/Curriculum, Journal Clubs, GIM Conferences, Plus One/Clinic Schedules, Evaluations, Evaluation Planning Meetings, Primary Care Leadership Meetings, Trainings, Updating the Wiki, Clinic Changes, Meetings as well as Activities for Pathways to Distinctions, Wellness Events/Committees, Proposals/Grants, Program Orientation/Implementation, Internal Medicine CCC Meetings. Organizing Clinic Rotations at the new VA Site, Locating Sub-Specialty Sites, and other Meetings. These duties were previously assigned to the Plaintiff and many are included in her job description. Other similarly

situated program coordinators who are not African American did not have their duties or responsibilities decreased or removed.

15. On numerous occasions, both via email and in person, the Plaintiff reached out to Marsh about schedules, changes, clinics, and all duties as described in her job description. The Plaintiff reached out to Marsh via email on December 19, 2019, telling him that she has not been involved with Ambulatory work and would like to carry out her job duties. Additionally, Plaintiff reached out to Marsh on multiple occasions requesting work assignments and clarification. Marsh either failed to respond to her or would schedule a meeting with Plaintiff, and then fail to not show up to the meeting, also failing to inform Plaintiff that their meeting had been changed or canceled.

16. Marsh changed Plaintiff's job duties without the Plaintiff's input. On May 2019, the Plaintiff was informed by Dennar that her role was set to change, and that she would no longer hold the position of Internal Medicine/Ambulatory Coordinator. Plaintiff was told by Dennar that she received an email stating that Internal Medicine had found funding to make the Plaintiff a Full-Time Coordinator just for Med-Peds. Plaintiff was not involved in the re-write of her job description and duties, and was not informed about, or included in any discussion about the changes. No one gave her the opportunity to consider the Ambulatory position. Smith was then informed that because she was no longer holding Internal Medicine/Ambulatory duties, that she would be require to move offices. Defendants' have a policy and practice of including employees in discussions regarding changes to job duties that would directly impact their positions. The Plaintiff was excluded from any and all discussions.

17. On June 5, 2018, Plaintiff was informed that the Accreditation Council for Graduate Medical Education (hereinafter "ACGME") would be coming to Tulane University to conduct a site visit.

4

18. On June 8, 2018, Plaintiff was in the process of gathering documents for the upcoming ACGME site visit when she noticed several of her Medical Residents' files missing.

19. On June 11, 2018, Plaintiff returned to her office to find that some of the previously stolen files had been returned and placed on her office chair.  On June 15, 2018, Plaintiff returned to her office to find more of the missing Med/Ped resident files thrown on her office floor.  On June 18, 2018, Plaintiff notified Tulane's Office of Institutional Equity and filed a police report with Tulane's Police Department.

20. The Plaintiff has not received a performance evaluation from Marsh.  Although Plaintiff received a cost-of-living increase, she did not receive a merit increase while employed by Tulane.

21. Because Plaintiff has complained about discrimination and retaliation, Defendants' required Plaintiff to report to Sue Pollock, a high-ranking Tulane Administrator in the School of Medicine.  Pollock reports to the Dean.  Similarly situated Program Coordinators and Administrative Staff who are not assigned to the Dean's suite do not report to Pollock. It's been reported that in the past, Pollock has gained a reputation in the community for intentionally going after employees to terminate them.  According to Dennar, it is highly unusual for Coordinators (who hold lower level positions) to report to Pollock.  Rather, Coordinator positions report to other employees that are below Pollock's position.

## CAUSES OF ACTION

### COUNT 1
### Race and Sex Discrimination

22. Count 1.  Discrimination is based on Race and Disparate Treatment.  Plaintiff engaged in protected activity when she complained about race and sex discrimination to Tulane's Office of Institutional Equity, and to the EEOC.  Tulane investigated and concluded that Plaintiff had been subject to Race discrimination.  Despite this finding, Defendants' and its employees continued to

subject Plaintiff to discrimination based on race and sex, even after the EEOC mediation process decided otherwise, and in favor of Plaintiff. Defendants' have continued to treat Plaintiff differently than similarly situated program coordinators and administrative personnel who do not identify as African American.

### COUNT 2
### Retaliation

23. Count 2. Defendants' subjected Plaintiff to retaliatory conduct because she filed a race discrimination complaint with Tulane's Office of Institutional Equity and with the EEOC. Despite finding that Plaintiff did in fact suffer from race discrimination, high-ranking officials in Plaintiff's Department, specifically Marsh, continued to discriminate against her, and retaliated against Plaintiff by removing and changing her job duties and responsibilities without her input and knowledge, removing her from previously attended professional meetings, and eliminating important job roles. Furthermore, Defendants' changed Plaintiff's reporting structure to her detriment because she engaged in protected activity. Defendants' failed to protect Plaintiff, despite of being aware of the discriminatory atmosphere within the Internal Medicine Department. Was it not for Plaintiff's protected activity, Defendants' would not have taken adverse employment action against Plaintiff.

### DAMAGES

24. Plaintiff has suffered from unwelcome race discrimination, retaliation and intimidation tactics that have interfered with Plaintiff's job performance, health and well-being. As a result of Defendants' discrimination and retaliatory conduct, Plaintiff suffers from mental exhaustion, stress and depression. Plaintiff seeks damages for mental and emotional distress. Plaintiff additionally seeks attorney fees and costs associated with the instant litigation, with interest from the date of judicial demand, as well as all other equitable relief this Court deems appropriate.

**PRAYER FOR RELIEF**

25. Wherefore, Plaintiff prays that, after due proceedings, a Judgment be entered in her favor and against Defendants, officially awarding Plaintiff:

- Trial by Jury;

- General and special damages for mental and emotional distress;

- Costs and reasonable attorney fees associated with this litigation; and

- All other relief deemed just and equitable by this Honorable Court.

**Respectfully Submitted By:**

*/s/ Robert C. Jenkins*
Robert C. Jenkins, Esq.
Law Office of Robert C. Jenkins
631 St. Charles Avenue
New Orleans, LA 70130
Telephone: (504) 586-1616:
Facsimile: (504) 569-0037
Email: rj1430@aol.com